DB09153PG0417 

Unit: SSA Unit #9698
Location: 9410 Taylorsville Rd.
Jeffersontown, KY
05-456-KY-000225

# SPECIAL WARRANTY DEED

THIS SPECIAL WARRANTY DEED made and entered into this the _18_ day of December, 2007, by and between SPEEDWAY SUPERAMERICA LLC, a Delaware limited liability company, with an address of 539 South Main Street, Findlay, Ohio 45840 ("Party of the First Part"), and, SAV-A STEP REAL ESTATE INC., an Indiana Corporation with an address of 610 Providence Way, Clarksville, Indiana 47129 ("Party of the Second Part").

## WITNESSETH:

THAT FOR AND IN CONSIDERATION of the sum of Six Hundred Thousand Dollars ($600,000.00), the receipt which is hereby acknowledged by Party of the First Part, Party of the First Part has this day BARGAINED and SOLD, and by these presents does hereby GRANT and CONVEY unto Party of the Second Part, in fee simple, its successors and assigns forever with covenants of SPECIAL WARRANTY, the following described real property located in Jefferson County, Kentucky, and being more particularly described as follows, to-wit:

SEE ATTACHED EXHIBIT A

PRIOR INSTRUMENT REFERENCE: Deed Book 9149, Page 811
PARCEL ID NO.: 22-0038-0365-0000

This conveyance has been authorized by Resolution of the Board of Managers of Party of the First Part and the individuals signing on behalf of Party of the First Part have been authorized to do so.

TO HAVE AND TO HOLD the Property, together with all rights, privileges, appurtenances and improvements thereunto belonging, unto Party of the Second Part, in fee simple, its successors and assigns forever.

Said Party of the First Part does hereby covenant to and with Party of the Second Part, its successors and assigns, that it is lawfully seized in fee simple title to the Property and that the Property is free and clear of all encumbrances of whatsoever nature and that it will WARRANT SPECIALLY the title to the Property.

Provided, however, that there is excepted from the foregoing warranty and covenants and this conveyance is made subject to the following: (a) Taxes and assessments (both general and special), not now due and payable; (b) Zoning ordinances, subdivision and planning laws and regulations and building code restrictions and all laws, rules and regulations relating to land and structures and their use, including but not limited to governmental regulations relating to buildings, building construction, building line and use and occupancy restrictions, and violations of any of the foregoing; (c) Easements, conditions, reservations, agreements and restrictions of record, if any; (d) Such a state of facts as an accurate survey might show; and (e) All legal roads and highways.

Upon acceptance of the deed, Grantee agrees that the trademarks and/or trade names of Speedway SuperAmerica LLC, including without limitation names Speedway and/or SuperAmerica,

{238312.DOC}

EXHIBIT
B

and/or any derivatives thereof, shall not be used at or on the premises in connection with the operation of any convenience store or the sale of petroleum products without the written consent of Speedway SuperAmerica LLC. This restriction shall be a covenant running with the land and shall be contained in and made a part of every deed, mortgage, lease or other instrument affecting the title to said premises.

Grantee agrees that for a period of (25) twenty-five years from and after the date of this conveyance, the premises shall not be used for the sale, marketing, storage or advertising of motor fuels, except the trademarked products of MARATHON PETROLEUM COMPANY LLC, its successors and assigns, purchased either directly from MARATHON PETROLEUM COMPANY LLC, its successors and assigns or from a MARATHON® branded Jobber and that the restriction shall be a covenant running with the land and shall be contained in and made a part of every deed, mortgage, lease or other instrument affecting the title to the premises.

This deed is subject to the following reservations, restrictions and conditions which shall be covenants running with the land and shall be binding upon Grantee, its successors, assigns and all future owners of the premises, and their respective directors, officers, employees, contractors, agents, representatives, lessees, licensees, invitees, and any user or occupant of all or any portion of the premises (collectively, "Grantee", for purposes of these reservations, restrictions and conditions):

    a)    Grantor, its successors and assigns reserves the right to enter upon the premises, at no cost to Grantor, at reasonable times to conduct any Corrective Action as and when required by the governmental agency with jurisdiction (the "Agency") in connection with a release of petroleum hydrocarbons at the premises. As used herein, the term, "Corrective Action", shall refer to one or more of the following activities: investigation, assessment, monitoring, sampling, analysis, cleanup, removal, disposal, on-site treatment, off-site treatment, active remediation, passive remediation, remediation alternatives including but not limited to site specific, risk-based corrective action ("RBCA"), if applicable, and/or other activities approved, concurred in or required by the Agency. In performing any Corrective Action at the premises, Grantor shall have the right to rely on and use any current, future or revised or amended state cleanup/remediation standards, guidelines or criteria or revised federal cleanup/remediation standards, if applicable, including without limitation any site-specific risk-based soil and groundwater cleanup objectives or other similar RBCA policies administered by the Agency. In performing any Corrective Action at the premises, Grantor may also rely on and implement institutional controls as provided for in applicable laws, regulations and policies to ensure the protection of public health, safety or welfare and the environment. Grantee acknowledges that such institutional controls may require deed recordation running with the land at the premises. Such deed recordation would contain certain restrictions based on site-specific exposure such as prohibiting the use of groundwater at the premises, requiring that the use of the premises remain commercial/industrial, or requiring the premises, or a portion of the premises, to be paved or that existing pavement remain in place and be properly maintained. Grantee agrees to permit reasonable institutional controls regarding the premises in connection with Grantor's performance of any Corrective Action thereon. Grantee agrees to provide Grantor, at no cost to Grantor, with Grantee's written consent and signature as needed in connection with the preparation, execution and recording of any necessary documents relating to any institutional controls which are to be recorded on the premises as part of Grantor's performance of Corrective Action.

Grantor reserves its legal appeal rights with respect to any orders, directives or requests of the Agency concerning but not limited to Corrective Action at the premises. Grantee agrees that, without prior written approval from Grantor, Grantee will not engage in any activity which would interfere with Grantor's performance of any Corrective Action at the premises. Such approval shall not be unreasonably withheld by Grantor. In the event that Grantee interferes with Grantor's performance of Corrective Action, Grantee agrees to pay Grantor for the reasonable costs incurred by Grantor as a result of any such interference, including, but not limited to, costs to replace monitoring wells that are damaged or destroyed by Grantee's activities.

b) The use of the premises shall be restricted solely to industrial/commercial use.

c) The installation and/or existence of potable wells on the premises is prohibited. The groundwater underneath the premises shall not be used for any purpose whatsoever. This restriction, however, does not prohibit the installation or use of any compliance wells, or any groundwater monitoring, recovery or extraction wells or similar devices, used for or related to the performance of any Corrective Action.

d) Grantee shall not have any claim against Grantor, or Grantor's parent companies, affiliates, predecessors, successors, assigns, subsidiary companies or their respective past, present and future officers, employees, agents and/or representatives (collectively, the "Released Parties"), based upon, related to or arising out of the presence of any contamination on, under or at the premises. The Released Parties are hereby forever released from any and all such claims including, but not limited to, any and all claims and statutory causes of action under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), the Resource Conservation and Recovery Act (RCRA), the Clean Water Act, the state law equivalents of such acts, state and federal underground storage tank laws and regulations and all other environmental laws and regulations, all as amended. This release shall not apply to claims of breach of that certain Offer to Purchase (including Exhibit "B") dated July 26, 2007 between Grantor and Grantee that may arise in the future.

e) Grantee agrees to adhere to, and comply with, the terms of any closure or no further action/remediation letter or determination from the Agency regarding Grantor's performance of any Corrective Action.

f) Grantee hereby agrees to defend (with counsel reasonably acceptable to the Released Parties), indemnify and hold the Released Parties (as defined above) harmless from and against any and all liabilities, claims, losses, suits, actions, judgments, damages, costs (including reasonable attorneys' fees) or penalties that result from, arise out of or relate in any way to any violation of the reservations, restrictions and/or conditions contained in this deed.

g) In case any one or more of the reservations, restrictions or conditions (or portions thereof) contained in this deed shall, for any reason, be held to be invalid, illegal or legally unenforceable, in any respect, such invalidity, illegality or unenforceability shall not affect any other portion of that provision or any other provision hereof (whether or not clearly divisible from such provision or portion thereof), and the above reservations, restrictions and conditions shall be construed and interpreted in

DB 09153 PG 0420

the manner which is valid, legal and legally enforceable, and which is most nearly consistent with the intention of Grantor and Grantee as evidenced by the above reservations, restrictions and conditions.

For purposes of compliance with KRS 382.135, Party of the First Part and Party of the Second Part hereby certify that the consideration reflected in this deed is the full consideration paid for the Property herein conveyed. Party of the Second Part joins in the execution of this deed for the sole purpose of certifying the amount of the consideration.

IT WITNESS WHEREOF, the Party of the First Part and Party of the Second Part have hereunto set their hands as of the day and year first above written.

SPEEDWAY SUPERAMERICA LLC

By: _____
Name: D.R. Heppner
Title: Vice President, Operations

SAV-A STEP REAL ESTATE INC.

By: _____
Name: Joseph S. Pierce
Title: President

-4-

08 09153 PG 0421

STATE OF OHIO ) 
)ss
COUNTY OF CLARK )

The foregoing deed and statement of consideration was subscribed, sworn and acknowledged before me on _December 12th_, 2007, by _David Heppner_, _Vice President_ Speedway SuperAmerica LLC, a Delaware limited liability company, and the free act and deed of such officer personally.

_Teri E. Smith_
Notary Public

My Commission expires:

_November 26, 2012_

TERI E. SMITH
NOTARY PUBLIC
STATE OF OHIO
Comm. Expires
November 26, 2012

STATE OF _INDIANA_ )
)ss
COUNTY OF _CLARK_ )

The foregoing deed and statement of consideration was subscribed, sworn and acknowledged before me on _December 18_, 2007, by his free act and deed of such officer personally.

Notary Public
_Alan M. Applegate_
_Resident of Clark Cty_

_Joseph J. Pierce, as President of Save-A-Stop Real Estate, Inc., an Indiana corporation_

This instrument was prepared by:

_Shawn Tracey_
Attorney at Law
539 South Main Street
Findlay, Ohio 45840

{238312.DOC}

EXHIBIT "A"

Legal Description

BEGINNING at an iron pipe in the East right-of-way line of Gleeson Lane, said point being the Northwest corner lot 46 of Highland Hills as recorded in Plat and Subdivision Book 21 Page 45 in the Office of the Clerk of the County Court of Jefferson County, Kentucky; thence with the East right-of-way line of Gleeson Lane, and with the chords of a curve to the left, having a radius of 425.00 feet, the following courses; North 57 degrees 24 minutes 09 seconds East 63.71 feet to an iron pipe, North 48 degrees 48 minutes 16 seconds East 63.71 feet to an iron pipe, and North 40 degrees 12 minutes 25 seconds East 63.71 feet to an iron pipe; thence leaving said curve, North 35 degrees 54 minutes 30 seconds East 79.90 feet to an iron pipe in the original South right-of-way line of Taylorsville Road; thence with said line South 57 degrees 23 minutes 12 seconds East 159.37 feet to an iron pipe; thence leaving said line South 29 degrees 03 minutes 30 seconds West 264.50 feet to an iron pipe; thence North 56 degrees 53 minutes 00 seconds West 233.37 feet to the point of beginning and containing 48,595 square feet or 1.11559 acres.

TOGETHER WITH the following easement: BEGINNING at an iron pipe in the East right-of-way line of Gleeson Lane, said point being the Northwest corner of a tract of land conveyed to Doris & Marvin Baker by deed recorded in Deed Book 3702 Page 44 in the Office of the Clerk of the County Court of Jefferson County, Kentucky and lying in the original South right-of-way line of Taylorsville Road; thence with said East right-of-way line of Gleeson Lane, North 35 degrees 54 minutes 30 seconds East 49.83 feet to a R.R. Spike at the intersection of the East right-of-way line of Gleeson Lane, aforesaid, and the South right-of-way line of Taylorsville Road, as shown on plans prepared by the Kentucky Department of Highways and dated F.Y. 1958; thence with the South right-of-way line of Taylorsville Road, aforementioned, South 47 degrees 56 minutes 10 seconds East 157.13 feet to a R.R. Spike; thence leaving said South right-of-way line of Taylorsville Road South 29 degrees 03 minutes 30 seconds West 23.99 feet to an iron pipe in the original South right-of-way line of Taylorsville Road, aforesaid; thence with said line North 57 degrees 23 minutes 12 seconds West 159.37 feet to the point of beginning and containing 5,801 square feet or 0.13317 acre.

BEING the same property acquired by **Speedway SuperAmerica LLC**, a **Delaware Limited Liability Company**, by Deed dated **December 11, 2007**, of record in **Deed Book 9149, Page 811**, in the Office aforesaid.

Document No.: DN2007199539
Lodged By: APPLEGATE
Recorded On: 12/18/2007    11:05:18
Total Fees:              626.00
Transfer Tax:            600.00
County Clerk: BOBBIE HOLSCLAW-JEFF CO KY
Deputy Clerk: SHESCH

END OF DOCUMENT