UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15-CV-354-DJH

COMMONWEALTH OF KENTUCKY,                                                             Plaintiff,

v.

MARATHON PETROLEUM COMPANY LP, et al.,                    Defendants.

## Memorandum Opinion and Order

Before the Court are a handful of motions: a motion for a protective order (DN 87) filed by plaintiff Commonwealth of Kentucky ("the Commonwealth"), a motion to stay discovery (DN 95) filed by defendants Marathon Petroleum Company LP, Marathon Petroleum Corp., and Speedway LLC ("Marathon")[1], and numerous motions to seal filed by both parties. For the reasons stated below, the Court **GRANTS** the Commonwealth's motion for a protective order, **DENIES** Marathon's motion to stay discovery, and **GRANTS** the motions to seal.

### I. Statement of Facts and Procedural History

The Commonwealth's second amended complaint alleges that Marathon has engaged in anticompetitive conduct in violation of the Sherman Act, Clayton Act, and Kentucky's Consumer Protection Act, through its business dealings in Louisville and northern Kentucky. (DN 88, #1087.) Essentially, the Commonwealth alleges that Marathon has entered into contracts with various gasoline retailers for the distribution of its reformulated gasoline ("RFG") that restrict its competitors' ability to challenge Marathon's market dominance. (*Id*. at 1087–88.)

---

[1] For the majority of this opinion, the Court will collectively refer to the defendants as "Marathon." When it is necessary, the Court will specify which of the defendants it is referring to.

1

The Commonwealth has alleged, *inter alia*, that these distribution agreements unlawfully restrict the gasoline retailers' ability to purchase RFG from Marathon's competitors; separate contracts allegedly include deed restrictions that prevent competitors from entering the market. (*Id*.)

Previously, this Court granted the Commonwealth's motion to amend its complaint. (DN 87.) The Commonwealth subsequently filed its second amended complaint, which added Speedway LLC and Marathon Petroleum Corp. as co-defendants alongside Marathon Petroleum Co. LP. (DN 88.) Marathon Petroleum Corp. promptly filed a motion to dismiss for a want of personal jurisdiction (DN 92). The majority of the motions at issue here deal with Marathon Petroleum Corp.'s motion to dismiss.

## II. Analysis

### A. Motion for a Protective Order

In its motion seeking a protective order, the Commonwealth argues that Marathon has improperly sought a Rule 30(b)(6) deposition from the Office of the Attorney General ("OAG"), because complying with the request would require it to either produce an attorney to testify or extensively prepare a non-attorney to testify, the latter option placing a significant burden on the Commonwealth. (DN 87-1, #883.) The Commonwealth does not argue that its attorneys are per se immune from being deposed or that it is exempt from certain types of discovery, but rather that Marathon has failed to demonstrate that it satisfies the so-called *Shelton* test, adopted by the Sixth Circuit in *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621 (6th Cir. 2002), for determining when it is appropriate to depose opposing counsel. (*Id*. at 884.) It argues that even though Marathon's 30(b)(6) notice is not directed at the OAG specifically – and therefore theoretically could apply to a non-attorney employee – the notice is the "practical equivalent" of

a notice to opposing counsel because the only people it could apply to are attorneys within the OAG. (*Id*. 891.)

On the other hand, Marathon argues that a recent case from this district, *Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, 2016 WL 9460471 (W.D. Ky. June 29, 2016) (hereinafter "*Borders & Borders*"), explicitly rejected the "practical equivalent" argument that other districts have utilized. (DN 94, #1226.) It argues that because opposing counsel is not being targeted for a deposition, the *Shelton* test does not apply in this case. (*Id*. at 1231.)

Thus, the Court must first determine whether Marathon's 30(b)(6) notice to the Commonwealth is the "practical equivalent" of sending a deposition notice to opposing counsel. If it is, then the Court then must determine if Marathon has met the *Shelton* standard for deposing opposing counsel.

## 1. Summary of Law

A party may, as the Commonwealth has done here, request that the Court grant it a protective order to protect the party from "annoyance, embarrassment, oppression, or undue burden" arising out of a discovery request. Fed. R. Civ. P. 26(c)(1). But before the Court can enter a protective order, the party seeking the order must demonstrate that "good cause" exists to grant the order; good cause can be met by a showing that absent the entry of a protective order, the party would suffer a clearly defined and serious injury. *Borders & Borders*, 2016 WL 9460471 at *2 (W.D. Ky. June 29, 2016) (citing *Glenmede Trust Co. v. Thompson*, 56 F. 3d 476, 483 (3rd Cir. 1995)).

In *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, the Sixth Circuit adopted the Eight Circuit's *Shelton* test for determining when opposing counsel can be deposed. 278 F.3d 621 (6th Cir. 2002) (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). The party

seeking to take the deposition must show that (1) no other means exists to obtain the information; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case. *Id.*

## 2. Analysis
### a. "Practical Equivalent" of Notice to Opposing Counsel

Before the Court can look to the elements of the *Shelton* test, it must first determine whether Marathon is seeking the deposition of Commonwealth attorneys in the first place. The Commonwealth argues that this is the case, because although Marathon's notice is not directed at the OAG, the only individuals who possess the knowledge to appear at a deposition would be the attorneys and their investigators within the OAG. (DN 87-1, #891.) The Commonwealth points to a case from the Northern District of Illinois, *SEC v. Buntrock*, where the district court prohibited the defendants from taking a 30(b)(6) deposition of the SEC because it would be akin to deposing opposing counsel. 217 F.R.D. 441, 444 (N.D. Ill. 2003). Marathon's response to the "practical equivalent" argument is to point this Court's recent decision in *Borders & Borders* (which does not discuss *Buntrock*), in which the Court rejected the Consumer Financial Protection Bureau's request to avoid having one of its attorneys testify as a 30(b)(6) representative. (DN 94, #1226.) It also criticizes – at length – the Commonwealth's citation to out-of-circuit and out-of-district cases. (DN 94, #1230.) It does not appear that the Sixth Circuit has issued a ruling directly on the applicability of the "practical equivalent" test, so the Court must look to out-of-circuit opinions for guidance. *U.S. v. Washington*, 584 F.3d 693, 698 (6th Cir. 2009).

In *Buntrock*, the Northern District of Illinois considered the issue of whether the defendants should be allowed to depose attorneys from the SEC. There, the SEC initiated a civil

fraud enforcement action against the defendants, and during discovery, the defendants sought a 30(b)(6) deposition from someone in the SEC who could testify about "basically" the "results of the SEC's investigation." *SEC v. Buntrock*, 217 F.R.D. 441, 443 (N.D. Ill. 2003). As the Commonwealth has done here, the SEC objected to the deposition because complying with the deposition notice would require it to either have one of its own attorneys testify or extensively prepare a non-attorney to testify. *Id*. The Court agreed with the SEC, holding that the defendants improperly sought to depose opposing counsel. *Id*. at 444. It rejected the defendants' argument that the SEC could simply designate a non-attorney employee to testify on its behalf; because the only people who investigated the case were either SEC attorneys or SEC investigators acting at the direction of SEC attorneys, any deposition testimony of a person instructed by the SEC would necessarily include attorney testimony merely repeated through a third party. *Id*. *See also SEC v. Morelli*, 143 F.R.D. 42 (S.D.N.Y. 1992); *EEOC v. HBE Corp.*, 157 F.R.D. 465 (E.D. Mo. 1994) (reaching similar conclusions).

In *Borders & Borders*, this Court addressed a motion from the Consumer Financial Protection Bureau ("CFPB") that requested the defendants' Rule 30(b)(6) notice be quashed because, *inter alia*, it would require that the CFPB produce an attorney (or the functional equivalent of one) for the deposition. *Borders & Borders*, 2016 WL 9460471, at *1 (W.D. Ky. June 29, 2016). The Court rejected those arguments, noting that a government agency has an obligation to comply with Rule 30(b)(6) and produce a representative to testify; if the CFPB wanted to assert a privilege, such as the attorney-client or work product privilege, it could do so in response to specific questions at the deposition. *Id*. at *11. But it could not, the Court ruled, "preemptively, and in blanket fashion, invoke any of the cited privileges to cut off even the

5

possibility of a Rule 30(b)(6) deposition." *Id*. Notably, the Court did not address the issue of whether it would be appropriate to have a CFPB lawyer (or have someone extensively prepared by a lawyer) testify as the 30(b)(6) representative.

After carefully considering the position of both parties, the Court agrees with the Commonwealth and the *Buntrock* court that Marathon seeks to depose opposing trial counsel or the functional equivalent thereof. As an initial matter, the Court is persuaded by the Northern District of Illinois's reasoning in *Buntrock*; while the Court is cognizant that no governmental organization is exempt from discovery based on that status alone, not every governmental organization is analogous in structure to a corporation. Some, like the OAG, are staffed primarily by attorneys and non-attorneys who work at their direction. Unlike a corporation, which has non-attorney officers and directors who can properly be designated as a 30(b)(6) representative, organizations like the OAG do not have such individuals. It thus logical to utilize different standards when such an organization is a litigant before the Court.

The Commonwealth has submitted a signed affidavit from an Assistant Attorney General in the Office Consumer Protection, a division of the OAG, stating that the only people with suitable knowledge about this case are OAG attorneys or those who have worked directly under them, such as the investigators and paralegals – the same as in *Buntrock*. (DN 87-2, #911); *Buntrock*, 217 F.R.D. at 444. It only follows that should an OAG attorney prepare another member of the office to testify at the deposition, that employee would necessarily be repeating the information the attorney told him. The Court sees little difference between an OAG attorney testifying directly and an OAG non-attorney testifying armed only with information conveyed to him by the attorney. Although Marathon claims that it seeks only facts and not any privileged

6

material, "it is the selection and compilation of the relevant facts that is at the heart of the work product doctrine." *E.E.O.C. v. HBE Corp.*, 157 F.R.D. 465, 466 (E.D. Mo. 1994) (citing *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986)); (DN 87-10, #1073; DN 94, #1229.)

b. *Shelton* Test

Having determined that Marathon seeks to depose the Commonwealth's counsel or their functional equivalent, the Court now turns to whether the deposition of opposing counsel would be proper. In *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, the Sixth Circuit explicitly adopted the Eight Circuit's *Shelton* test for determining when courts should allow the deposition of opposing counsel. 278 F.3d 621, 628–29 (6th Cir. 2002) (citing *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). The party seeking to depose opposing counsel bears the burden of demonstrating that: (1) no other means exist to obtain the information sought; (2) the information is relevant and non-privileged; and (3) the information is crucial to the preparation of the case. *Id*. Marathon, however, has failed to directly address the *Shelton* factors, instead declaring that the binding Sixth Circuit precedent is "completely irrelevant" in this case because Marathon "does not seek to depose opposing counsel." (DN 94, #1231.) Marathon's failure to directly address the Commonwealth's argument – especially when Marathon bears the burden of persuasion – constitutes waiver of its argument. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (finding waiver where party bearing the burden of persuasion failed to offer arguments as to why it met every element of the tort); *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 629 (6th Cir. 2002) (stating that the party seeking to take the deposition must demonstrate that it satisfies all three elements).

Marathon's failure to argue in the alternative is best illustrated with a discussion of the first element of *Shelton*, which tasks the deposing party with showing that no other means exist to obtain the information sought. *Nationwide Mut. Ins. Co. v. Home Ins. Co*, 278 F.3d 621, 628–29 (6th Cir. 2002). In its written submission, Marathon touches on this element, but merely states that it has not "obtained all of the information it seeks." (DN 94, #1238.) It states that the Commonwealth has denied it "relevant, non-privileged information, including information provided to the OAG by witnesses during the investigation," but it does not specify what this information is. (*Id.*) In an unrelated section of its written submission, Marathon claims that it has "no alternative means to obtain binding testimony regarding relevant information provided to the OAG by witnesses it interviewed or otherwise communicated with during its investigation." (*Id.* at 1230.) For its part, the Commonwealth states that it has already disclosed the identities of its non-confidential witnesses (whom Marathon has already deposed), and that it would be willing to respond to any additional topics via written responses. (DN 87-1, #884, 897–98.) Apart from arguing that a deposition by written questions "is not an adequate substitute" for an in-person deposition, Marathon does not argue that it would be unable to obtain the information through written questions – just that it does not want to. (DN 94, #1234.)

Reading in between the lines of its brief, Marathon appears to be arguing that it is entitled to information regarding the Commonwealth's confidential witnesses, and that the only way to obtain this information is through a 30(b)(6) deposition. This is the only "information" that Marathon hints at not currently having. Without opining on whether Marathon is even entitled to that information in the first place, the Court disagrees, especially in light of the substantial written discovery that it has served on the Commonwealth (121 requests for admission, 14

8

interrogatories, and 21 requests for production). (DN 87-1, #898.) Moreover, Marathon does not explain why further written discovery via a Rule 31 deposition would not be fruitful in this particular case, but states, in a nutshell, that it would rather conduct a 30(b)(6) deposition. (DN 94, #1234.) Of course, if given the opportunity, every civil litigant would be more than willing to "dispense with interrogatories, document requests, and depositions of lay persons" and simply depose opposing counsel. *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). But as the Eight Circuit explained in *Shelton*, there are very few cases that necessitate a deposition of opposing counsel. This case is not one of those rarities.

Because the Court finds that Marathon has failed to demonstrate that it cannot obtain the information it seeks in any way other than deposing opposing counsel, it has failed to meet its burden under *Shelton*. Accordingly, the Court will not address the final two factors of the *Shelton* test. Therefore, the Court **GRANTS** the Commonwealth's motion for a protective order (DN 87).

### B. Motions to Seal

Next, the Court turns to the various motions to seal that have been filed. These include motions by the Commonwealth to seal Marathon's motion to dismiss (DN 100) and motion to stay discovery (DN 102), and a motion to seal its own motion to compel (DN 123) and its reply to that motion to compel (DN 131). Marathon has filed several motions to seal as well; these include a motion to seal its reply in support of its motion to stay discovery (DN 106), a motion to seal its reply in support of its motion to dismiss (DN 108), and a motion to seal its response to the Commonwealth's motion to compel (DN 129). The Court will address the motions by grouping.

### 1. Summary of Law

Although the Sixth Circuit has long recognized a "strong presumption in favor of openness" regarding court records, there are certain interests that overcome this "strong presumption." *Rudd Equipment Co., Inc. v. John Deere Construction & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016) (citing *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983)). These interests include "certain privacy rights of participants or third parties, trade secrets, and national security." *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1179. The party seeking to seal the records bears a "heavy" burden; simply showing that public disclosure of the information would, for instance, harm a company's reputation is insufficient. *Id.*; *Shane Grp. Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016). Instead, the moving party must show that it will suffer a "clearly defined and serious injury" if the judicial records are not sealed. *Shane Grp. Inc.*, 825 F.3d at 307. Examples of injuries sufficient to justify a sealing of judicial records include those that could be used as "sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Comm'ns, Inc.*, 435 U.S. 589, 598 (1978). In rendering a decision, the Court must articulate why the interests supporting nondisclosure are compelling, why the interests supporting public access are not as compelling, and why the scope of the seal is no broader than necessary. *Shane Grp. Inc.*, 825 F.3d at 306.

Importantly, the presumption that the public has the right to access judicial records does not vanish simply because all parties in the case agree that certain records should be sealed. *Rudd Equipment Co., Inc.*, 834 F.3d at 595 (noting that although the defendant did not object to the plaintiff's motion to seal, his lack of objection did not waive the public's First Amendment

and common law right of access to court filings); *Shane Grp. Inc.*, 825 F.3d at 305 ("A court's obligation to keep its records open for public inspection is not conditioned on an objection from anybody.").

2. Analysis

On May 24, 2017, this Court partially granted the parties' motion for an agreed protective order. (DN 70.) Although the Court does not generally entertain agreed protective orders, it was appropriate in this case because of the nature of the plaintiff, the Commonwealth of Kentucky. During the course of litigation, Marathon would have to disclose (and has disclosed) certain confidential documents during discovery, such as private contracts and pricing information, and ordinarily the confidentiality of those documents would be preserved through an agreement between the parties. But because the Commonwealth is subject to Kentucky's open records laws, a private individual (or a rival of Marathon) could submit an open records request to gain access to those documents. (*Id*. at 683.) If the Commonwealth received such a request, then a Kentucky state court would need to rule on whether the Commonwealth should produce the documents or not. (*Id*.) The Court's protective order prevented that situation from happening, but notably, it did not permit the parties to automatically file any document it wished to under seal. (*Id*. at 686.)

a. Motion to Dismiss (DNs 100, 108)

Up first is the parties' request to seal certain documents related to Marathon's motion to dismiss for a lack of personal jurisdiction. The Commonwealth requests that the Court seal "Exhibits C, D, and E" of Andrew G. Downey's Declaration along with highlighted portions of the Commonwealth's memorandum of law in response to Marathon's motion to dismiss. (DN

11

100, #1398.) Other than the fact that these specific documents were disclosed by Marathon and marked as confidential, the Commonwealth does not offer any explanation as to why these documents should be protected from public disclosure. (*Id.*) The documents consist of contract renewals between Marathon and various third parties that are not part of the litigation. In its motion to seal, Marathon asks that the Court seal portions of its reply to support its motion to dismiss along with Exhibits 1 and 2. (DN 108, #2314.) Marathon states that these two exhibits are supply agreements that it entered into with customers for the sale of gasoline products in the operative area, and that public disclosure of those agreements would harm Marathon's business interests. (*Id.*) More specifically, the supply documents reveal the "terms, prices, and volume" that the third parties with whom Marathon negotiated the deals would be willing to accept in the operative market. (*Id.* at 2318.) The portion of its reply brief that Marathon wishes to seal contains a detailed discussion of these two exhibits. (*Id.* at 2316.)

The Court agrees with the parties that the documents and portions of documents in question should be sealed. To begin with, the public interest in these documents is low. While certain curious members of the public might be interested to learn about the details Marathon's various business dealings, because the underlying motion is a motion to dismiss premised on a lack of personal jurisdiction, the documents are offered only to show Marathon Petroleum Corp.'s business contacts – or lack thereof – in the operative region. (DN 108, #2317–18.) This is unlike documents that would be offered as evidence on the merits of the case, where the public would have a substantial interest in knowing what evidence exists (or does not exist) that would show that Marathon engaged in anticompetitive conduct. In contrast to the relatively low levels of public interest, the Court believes that Marathon could suffer a serious injury if its contracts

were revealed to the public. If Marathon's contracts were made public, rivals could easily learn of the terms of its deals, which could allow them to swoop in and poach the third parties from underneath Marathon. Although the pricing information and supply agreements may not be "trade secrets" in the technical sense (e.g. proprietary chemical formulas or engineering patents), they undoubtedly constitute "information which is used in [Marathon's] business, and which gives [it] an opportunity to obtain an advantage over competitors who do not know or use it." *Apple, Inc. v. Samsung Elec. Co., Ltd*., 2012 WL 6115623, at *1 (N.D. Cal. Dec. 10, 2012). Finally, the scope of the seal is appropriately narrow. Rather than requesting that their entire briefs and all exhibits be sealed, the parties have limited the scope of the seal to only the exhibits in question and the portion of their briefs that discuss them.

The fact that third parties, who are not part of this litigation but contracted with Marathon, would also have confidential information revealed in the event of disclosure also weighs heavily into the Court's decision. Similar to how Marathon could suffer competitive harm if its contractual terms were revealed to the public, the parties it contracted with could suffer the very same harm without even having notice that their information is available to the public.

The Court **GRANTS** the parties' motions to seal certain exhibits and portions of documents related to Marathon's motion to dismiss.

b. Motion to Stay Discovery (DNs 102, 106)

The parties' motions requesting seals regarding certain material relating to Marathon's motion to stay discovery are identical to motions to seal discussed above. Because the arguments and the documents in question are the same, the Court **GRANTS** the parties' motions

to seal certain exhibits and portions of documents related to Marathon's motion to stay discovery.

### c. Motion to Compel (DNs 123, 129, 131)

Lastly, the Court turns to the parties' motions to seal certain information relating to the Commonwealth's motion to compel. As before, the Commonwealth's two motions to seal (DNs 123, 131) are relatively lacking in substance; Marathon, however, requests that the Court seal its entire response in opposition to the Commonwealth's motion to compel as well as Exhibit 3 attached to it. (DN 129, #3028.) Marathon explains that Exhibit 3 consists of a declaration and 30(b)(6) third-party deposition testimony, wherein the deponent spoke of "certain facts regarding the business relationship between the third-party and a defendant, including the third-party's contracts to purchase RFC and/or Summer RFG from the defendants, demand for RFG products, options for supplying RFG products in Louisville and Northern Kentucky, and product negotiation process." (*Id*. at 3029–30.) As a result, Marathon states that "the deposition testimony included in Exhibit 3 explores several aspects of the third-party's retail gasoline business which are not publicly known." (*Id*. at 3030.) Similar to its requests to seal above, Marathon argues that disclosure of the "confidential business information" could harm both its and the third-party's ability to "enter into competitive supply agreements" because the documents "reveal what terms those third-parties may be willing to accept." (*Id*. at 3032.)

Although the Court is usually disinclined to seal entire responses, having reviewed both Exhibit 3 and Marathon's response to the motion to compel (DN 130), the Court finds good cause to keep both documents under seal. As the Sixth Circuit stated in *Shane Group, Inc.*, the " 'privacy interests of innocent third parties should weigh heavily in a court's balancing equation.' " *Shane Group, Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 308 (6th Cir. 2016)

(quoting *U.S. v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)). While disclosure of the third party's 30(b)(6) deposition and Marathon's response brief (large portions of which are dedicated to discussing the deposition and a separate declaration from the 30(b)(6) deponent) would reveal some of Marathon's confidential business information, far greater harm would come to that third party. At the time it entered into the contracts with Marathon, it had no reason to believe that they would eventually become matter of public record; moreover, the revelation of its information would harm its ability to enter into supply agreements with suppliers other than Marathon.

Although this case does not implicate the same statutorily mandated privacy interests as was the case in *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470 (6th Cir. 1983), the Sixth Circuit's discussion of third party privacy interests in that case is helpful. There, the Sixth Circuit differentiated the case before them, where it denied two newspapers' writ of mandamus to "unseal" two exhibits that the district court had removed from the record before they could be inspected by the public, from *Brown & Williamson Tobacco*, where it had held that the district court improperly sealed business records. The *Knoxville* court noted that whereas harm to a party's business reputation is insufficient to justify sealing records (*Brown & Williamson Tobacco*), harm to third parties whose only involvement in the case is business dealings with the defendant is a sufficiently justifiable reason to seal the records. *Id.* at 477 (citing *In re Nat. Broadcasting Co., Inc.*, 653 F.2d 609 (D.C. Cir. 1981)). The Sixth Circuit also found it important that the third parties had an expectation that their names and financial information would not be revealed to the public simply by dealing with a bank. *Id.* And although the third party in the case before the Court does not enjoy the same privacy protections via statutes that

the banking customers in *Knoxville* had, it still has an expectation that its private dealings with Marathon would remain private, not subject to public scrutiny.

The Court does not believe that redaction would be sufficient for these specific documents because Marathon's response is heavily premised on both the 30(b)(6) deponent's deposition testimony and sworn declaration. A redaction of the confidential material would leave very little left of Marathon's written submission, resulting in what the Court believes would be the functional equivalent of a sealed document. Therefore, the Court will **GRANT** Marathon's motion to seal (DN 129).

### C. Motion to Stay Discovery

Finally, Marathon argues that the Court should stay discovery pending the resolution of one of its entities motion to dismiss for a want of personal jurisdiction. (DN 95-1.) Marathon Petroleum Corp. is the entity that Marathon seeks to have dismissed from the lawsuit. (*Id*. at 1346.) In support of its motion, Marathon argues that while the Commonwealth would not be prejudiced by a stay of discovery, Marathon would be substantially prejudiced because if Marathon Petroleum Corp. is later dismissed from this case, it would have unnecessarily expended resources for discovery. (*Id*.) The Commonwealth has opposed the motion by arguing that the filing of a dispositive motion is not sufficient in of itself to support a discovery stay, and moreover, Marathon Petroleum Corp. would not be harmed continuing discovery because it is already participating in discovery. (DN 103, #2646.)

It is well established that the scope of discovery is within the sound discretion of the trial court. *Chrysler Corp. v. Fedders Corp.*. 643 F.2d 1229, 1240 (6th Cir. 1981) (*citing H. K. Porter Co., Inc. v. Goodyear Tire and Rubber Co*., 536 F.2d 1115 (6th Cir. 1976)). This includes

whether discovery should be stayed pending the resolution of a dispositive motion. *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999); *Ohio Bell Telephone Co., Inc. v. Global NAPs Ohio, Inc*. 2008 WL 641252, at *1 (S.D. Ohio Mar. 4, 2008) (citing *Chrysler Corp.*, 643 F.2d at 1229). Generally, the mere filing of a dispositive motion is insufficient to support a stay of discovery. *Baker v. Swift Pork Co.*, 2015 WL 6964702, at *1 (W.D. Ky. 2015 Nov. 10, 2015); *Boddie v. PNC Bank, NA*, 2012 WL 4088683, at *2 (S.D. Ohio Sept. 17, 2012) (citing *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990)). The *Gray* court noted that had Fed. R. Civ. P. 12(b)(6) contemplated a stay of discovery pending the resolution of a motion under its section, the Rules would have contained a provision to that effect. *Gray*, 133 F.R.D. at 40. It concluded its analysis by musing that a stay on discovery in light of a motion to dismiss might be appropriate where the complaint "was utterly frivolous" or "filed merely…to conduct a fishing expedition or for settlement value." *Id*. Others courts have stated that a stay of discovery is only appropriate pending a motion to dismiss when the motion "raises an issue such as immunity from suit…or unless it is patent that the case lacks merit and will almost certainly be dismissed." *Boddie*, 2012 WL 4088683 at *2. Even so, courts in this district have ordered stays on discovery where "claims may be dismissed 'based on legal determinations that could not have been altered by any further discovery,' or where 'discovery would be futile' if the motion to dismiss is granted." *Lani v. Schiller Kessler & Gomez, PLLC*, 2017 WL 3092098, at *2 (W.D. Ky. Apr. 4, 2017) (quoting *Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 304 (6th Cir. 2012); *Flores v. Penn. Dept. of Corrections*, 2013 WL 2250214, at *1–2 (M.D. Penn. May 22, 2013)).

The Court declines to place a stay on discovery in this case. Based on the Court's review of the relevant case law in this circuit and others, each court appears to have its own set of criteria for determining when a stay should be granted following the filing of a dispositive motion. The only rule that every court is seemingly in agreement with is that the district court has considerable discretion in determining whether or not to grant a stay. The undersigned will utilize the same standard as in *Baker v. Swift Pork Co.*, 2015 WL 6964702 (W.D. Ky. Nov. 10, 2015); absent the presence of a meritless complaint and/or a defense of immunity from suit, discovery will proceed while the Court considers Marathon's motion to dismiss. Marathon does not allege that Marathon Corp. is completely immune from suit, but rather that the Court lacks personal jurisdiction over it. (DN 107, #2238.) And although Marathon would surely argue that the Commonwealth's allegations are without any merit, this Court has already denied most of its previous motion to dismiss in 2016. (DN 41.)

Another factor in the Court's decision is the procedural posture of this case. At the entry of this order, the case is a little more than three years old, and the parties are still mired in fact discovery. During a Rule 16 conference in December 2016, the Court advised the parties that although it believed their proposed scheduling order was "generous," it would still proceed with it because extensions were "built in" at the outset. (DN 59, #607–08.) The parties' proposed fact discovery cutoff was July 31, 2017, which was eventually extended by approximately sixth months to January 15, 2018. (DNs 58, 78.) If Marathon's motion to dismiss Marathon Petroleum Corp. from this lawsuit is not granted, the Court anticipates that fact discovery will continue into the summer and possibly beyond.

The Court also notes that Marathon's motion to stay discovery is not the first time that Marathon Petroleum Corp. has attempted to avoid participating in discovery in this case. Previously, in arguing to this Court that the Commonwealth should not be allowed to amend its complaint to include it as a defendant, Marathon Petroleum Corp. argued that should it be joined, it would be unduly burdened by its newfound discovery obligations. (DN 86, #874.) The Court rejected its argument back then, and it rejects the same argument today. Unless Marathon Petroleum Corp. is dismissed from this lawsuit with prejudice, it will fulfill its discovery obligations just as any other civil litigant is expected to do.

Therefore, the Court **DENIES** Marathon's motion to stay discovery (DN 95.)

### III. Conclusion

Based on the foregoing, the Court:

**GRANTS** DNs 87, 100, 102, 106, 108, 123, 129, and 131.

**DENIES** DN 95.

cc: Counsel of record