UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

COMMONWEALTH OF KENTUCKY,                                    Plaintiff,

v.                                          Civil Action No. 3:15-cv-354-DJH-CHL

MARATHON PETROLEUM COMPANY
LP, et al.,                                                  Defendants.

* * * * *

## MEMORANDUM OPINION AND ORDER

The Commonwealth of Kentucky claims that Defendants Marathon Petroleum Corporation, Marathon Petroleum Company LP, and Speedway LLC are affiliated and have collectively used their dominant position in the Louisville and Northern Kentucky gasoline markets to further their monopoly and thwart competition in violation of federal and state antitrust laws. (Docket No. 88) Marathon Petroleum Corp. argues that the Commonwealth's claims against it should be dismissed for lack of personal jurisdiction. (D.N. 92) Additionally, all three Defendants move to dismiss the Commonwealth's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (*Id*.; D.N. 93) For the reasons set forth below, the Court will deny Defendants' motions to dismiss.

## I.      Background

**A. Allegations**

The following facts are set out in the complaint and accepted as true for purposes of the pending Rule 12(b)(6) motions.[1] *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

---

[1] As explained below, Marathon Corp. contests many of the alleged facts in its motion to dismiss for lack of personal jurisdiction. (*See* D.N. 92)

Marathon Petroleum Corporation, together with its subsidiaries Marathon Petroleum LP and Speedway LLC, is one of the largest petroleum product refiners, marketers, and transporters in the United States.  (D.N. 88, PageID # 1093)  "Marathon" is the largest refiner in the Midwest, and owns the only refinery in Kentucky.[2]  (*Id.*, PageID # 1089)  It is also the largest gasoline supplier in Kentucky and largest reformulated gasoline (RFG) supplier in Louisville and Northern Kentucky.[3]  (*Id.*)  Indeed, Marathon's approximate RFG wholesale market share in Louisville and Northern Kentucky is between 90 and 95 percent.  (*Id.*, PageID # 1090)

The Commonwealth claims that Marathon's market share "has allowed it to illegally manipulate and attempt to manipulate the market for RFG in . . . Louisville and [Northern Kentucky]."  (*Id.*)  Specifically, the government contends that Marathon maintains its market dominance through a variety of contractual arrangements.  (*Id.*)  First, Marathon allegedly executed exchange agreements with its horizontal competitors—i.e., competitors at the same market level—to keep other potential RFG suppliers out of Kentucky.[4]  (*Id.*, PageID # 1097)  Second, the Commonwealth alleges that Marathon uses supply agreements with unbranded gasoline retailers to "limit the retailers' ability to obtain gasoline from Marathon's

---

[2] The Commonwealth's second amended complaint refers to Marathon Corp., Marathon LP, and Speedway collectively as "Marathon."  (*See* D.N. 88, PageID # 1087)  As discussed below, Defendants take issue with that shorthand.

[3] RFG is a special type of gasoline that gas stations must sell during the summer in certain parts of Kentucky.  *See* 42 U.S.C. § 7545(k)(6)(A).  (D.N. 88, PageID # 1093)

[4] An exchange agreement "is a contract between two [gasoline] refiners by which the two companies trade gasoline."  (D.N. 88, PageID # 1094)  These include reciprocal buy-sell agreements with major horizontal competitors in markets.  (*Id.*, PageID # 1097)  As characterized by Marathon, the exchange agreements "involve a refiner or supplier agreeing to provide gasoline to a competing refiner for sale in a particular area where that competitor has insufficient supply."  (D.N. 28-1, PageID # 219)  The parties to the agreement will make some quantity of gasoline available to each other in areas where one party has "a refinery, large storage facilities, or access to a ready supply" of gasoline and the other party does not.  (*Id.* (quoting *Thomas v. Amerada Hess Corp.*, 393 F. Supp. 58 (M.D. Pa. 1975)))

competitors . . . [and] require [them] to waive their right to claim that Marathon's pricing is unfair or anticompetitive."[5]  (*Id.*, PageID # 1090)  Third, Marathon has allegedly sold numerous retail gas station properties (i.e., its Speedway locations) saddled with deed restrictions that permit gasoline sales on the property only if the gasoline is purchased from Marathon.  (*Id.*, PageID # 1099)  Indeed, Marathon's website states that it has 280 such properties in 13 states throughout the Midwest and Southeast.  (*Id.*, PageID # 1100)

As a result of these practices, the Commonwealth asserts, Marathon has caused the wholesale and retail prices of RFG to be substantially higher in Kentucky than those found in comparative competitive markets.  (*Id.*, PageID # 1101)

**B. Procedural History**

On May 12, 2015, the Commonwealth brought this action against Marathon LP, alleging violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2; the Clayton Act, 15 U.S.C. § 14; and various provisions of the Kentucky Consumer Protection Act.  *See* Ky. Rev. Stat. § 367.175(1), (2); *id.* § 367.170(1).  (D.N. 1)  The government also alleged unjust enrichment. (*Id.*)  Marathon LP moved to dismiss the complaint, arguing that the Commonwealth's antitrust claims were barred by the indirect-purchaser rule established in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  (D.N. 28-1, PageID # 225–29)  Additionally, Marathon LP argued that the Commonwealth's unjust-enrichment claim should be dismissed because no one conferred a benefit on Marathon.  (*Id.*, PageID # 232–33)  In a Memorandum Opinion and Order entered June 8, 2016, the Court dismissed the government's unjust-enrichment claim.  *Commonwealth of Ky. v. Marathon Petroleum Co., LP*, 191 F. Supp. 3d 694, 706 (W.D. Ky. 2016).  The Court allowed the

---

[5] Gasoline retailers can either be branded, attracting consumers through brand loyalty, or unbranded, attracting consumers due to price. (D.N. 88, PageID # 1098)

Commonwealth to proceed with its antitrust claims, however, finding that the indirect-purchaser rule did not bar those claims since the government had sufficiently alleged the "control exception" to the rule. *Id*. at 699–700, 705. Marathon LP then moved to amend the Order to permit interlocutory appeal. (D.N. 48) The Court denied the motion, concluding: "Given the extent to which the control exception has been applied throughout the various circuits, there is adequate guidance on this issue . . . . Therefore, no substantial ground for difference of opinion exists." *Commonwealth of Ky. v. Marathon Petroleum Co., LP*, No. 3:15-cv-354-DJH, 2016 WL 7031904, at *4 (W.D. Ky. Dec. 1, 2016).

On May 20, 2017, the Commonwealth moved for leave to file a second amended complaint, seeking to add Marathon Corp.—Marathon LP's corporate parent—and Speedway—Marathon LP's sister subsidiary—as defendants. (D.N. 71) The Court granted the amendment, finding that "[t]here is a common question of law and fact that applies to all three proposed defendants (whether they collectively, as branches of the same corporate entity, engaged in a scheme to unlawfully suppress competition and fix prices)." *Commonwealth of Ky. v. Marathon Petroleum Co., LP*, No. 3:15-CV-354-DJH, 2017 WL 4799816, at *4 (W.D. Ky. Oct. 24, 2017). Marathon Corp. now moves to dismiss the claims against it for lack of personal jurisdiction. (D.N. 92) Marathon Corp., Marathon LP, and Speedway also move to dismiss the complaint pursuant to Rule 12(b)(6). (*Id.*; D.N. 93)

## II.    Marathon Corp.'s Rule 12(b)(2) Motion

### A. Standard

The burden is on the Commonwealth to show that personal jurisdiction exists as to each defendant. *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). "[I]n the face of a properly supported motion for dismissal, the [Commonwealth] may not stand on [its] pleadings

but must, by affidavit or otherwise, set forth specific facts showing that the [C]ourt has jurisdiction." *Id*. When presented with a Rule 12(b)(2) motion, the Court has three options: (1) "decide the motion upon the affidavits alone," (2) "permit discovery in aid of deciding the motion," or (3) "conduct an evidentiary hearing to resolve any apparent factual questions." *Id*. (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). Where, as here, no evidentiary hearing has been held, a plaintiff must merely make a *prima facie* showing of personal jurisdiction. *Preferred Capital, Inc. v. Associates in Urology*, 453 F.3d 718, 720 (6th Cir. 2006); *see also Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012). The Court will view the evidence in the light most favorable to the Commonwealth without "weigh[ing] the controverting assertions" of Marathon Corp. *Theunissen*, 935 F.2d at 1459. Dismissal is proper only "if all of the specific facts . . . alleged collectively fail[] to state a *prima facie* case for jurisdiction." *Id*.

"A federal court sitting in diversity may exercise personal jurisdiction over an out-of-state defendant only to the extent that a court of the forum state could do so." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 148 (6th Cir. 1997). Under Kentucky law, the Court must first look to Kentucky's long-arm statute to determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011). If the statutory requirements are met, the Court must then apply the constitutional due process test "to determine if exercising personal jurisdiction over the non-resident defendant offends [its] federal due process rights." *Id*. *Caesars* clarified that "Kentucky's long-arm statute is narrower in scope than the federal due process clause." *Cox v. Koninklijke Philips, N.V.*, 647 F. App'x 625, 628 (6th Cir. 2016) (citing *Caesars*, 336 S.W.3d at 55–57).

## A. Kentucky Long-Arm Statute

The Kentucky long-arm statute provides, in relevant part: "A court may exercise personal jurisdiction over a person who acts directly or by agent, as to a claim arising from the person's . . . [c]ontracting to supply services or goods in this Commonwealth."[6] Ky. Rev. Stat. § 454.210(2)(a). The term "person" includes nonresident commercial entities. § 454.210(1). There is little case law interpreting the meaning of "contracting to supply services or goods" following *Caesars*. The Kentucky Supreme Court has held, however, that "[a] plain reading of [§ 454.210(2)(a)(2)] produces the interpretation that the contract need not be made or executed 'in this Commonwealth,' but, rather, only that the contract provide for the supplying of services or goods to be transported into, consumed or used in Kentucky." *Hinners v. Robey*, 336 S.W.3d 891, 896 (Ky. 2011). Additionally, the long-arm statute requires that a plaintiff's claims "arise from" the jurisdictional predicate (e.g., the contracting to supply goods). *Caesars*, 336 S.W.3d at 57. The Kentucky Supreme Court has interpreted "arising from" to mean that "the wrongful acts of the defendant alleged in the plaintiff's complaint must originate from the actions or activities that form the applicable statutory predicate for assertion of long-arm jurisdiction." *Id.* at 58–59.

---

[6] Marathon Corp. maintains that the Commonwealth may not rely on the contracting-to-supply prong of the long-arm statute because it failed to explicitly allege jurisdiction under that prong in its second amended complaint. (D.N. 109, PageID # 2332; *see also* D.N. 88, PageID # 1092) However, it is common practice for a plaintiff to raise for the first time in its response to a Rule 12(b)(2) motion the specific prongs of the long-arm statute on which it relies. *See, e.g.*, *United States v. Hargrove*, No. 3:16-cv-503-DJH-CHL, 2017 WL 403571, at *1–2 (W.D. Ky. Jan. 30, 2017). Marathon Corp. provides no authority indicating that this practice is disallowed or disfavored. Contrary to Marathon Corp's suggestion, *Tunne v. Hendrick*, No. 5:10CV–00181–JHM, 2012 WL 3644825 (W.D. Ky. Aug. 24, 2012), is inapplicable on that point. In *Tunne*, the plaintiff raised new facts in response to a motion to dismiss pursuant to Rule 12(b)(6). *Id.* at *4. A motion under Rule 12(b)(2) is significantly different than a Rule 12(b)(6) motion, however, since under the former, the Commonwealth may raise factual allegations beyond its pleadings. *See supra*.

In support of its motion to dismiss, Marathon Corp. argues that the Commonwealth has failed to establish jurisdiction under Kentucky's long-arm statute. In Marathon Corp.'s view, the Commonwealth's contention that the company is amenable to suit in this jurisdiction stems from its mistaken conflation of Marathon Corp. and its subsidiaries, Marathon LP and Speedway.[7] (D.N. 92-1, PageID # 1154) In an affidavit attached to Marathon Corp.'s motion to dismiss, Molly R. Benson—Vice President, Corporate Secretary, and Chief Compliance Officer of Marathon Corp.—asserts:

> Marathon Corp. exists solely as a holding company for direct and indirect subsidiaries, one of which, Marathon LP, is primarily engaged in the business of refining, marketing of petroleum products, and transporting petroleum and petroleum products. Speedway LLC, an indirect subsidiary of Marathon Corp., is in the business of the retail sale of petroleum products. Marathon Corp. does not itself engage in any business relating to the refining, marketing, retailing or transporting of petroleum or petroleum products.

(D.N. 92-2, PageID # 1178) Benson further contends that Marathon Corp. is not incorporated in Kentucky; has no agent for service of process in Kentucky; has no offices, employees, or mailing addresses in Kentucky; has never been licensed to do business in Kentucky; and has no operations or customers in Kentucky. (*Id.*, PageID # 1178–79) Benson also maintains that "Marathon Corp. has never entered into any exchange agreements or supply agreements relating to petroleum in Kentucky (or anywhere else)." (*Id.*, PageID # 1179)

---

[7] As explained below, the Court finds that the Commonwealth has satisfied its *prima facie* burden by indicating Marathon Corp.'s alleged direct involvement with the supply agreements at issue. Thus, while the parties expend much effort discussing whether the Court may exercise personal jurisdiction over Marathon Corp. based on the acts of its subsidiaries (D.N. 92-1, PageID # 1154–55, 1158–59; D.N. 101, PageID # 1413–20), that discussion is largely irrelevant to the Court's analysis. Indeed, the Court considers the alleged disregard of corporate formalities among the Marathon entities only to the extent that it bolsters the claim that Marathon Corp. signed at least two of the supply agreements at issue.

Based on Benson's affidavit, the Court finds that Marathon Corp. has met its initial burden to show that the Court cannot exercise jurisdiction over the company. Accordingly, the Commonwealth "may not stand on [its] pleadings but must, by affidavit or otherwise, set forth specific facts showing that the [C]ourt has jurisdiction." *Theunissen*, 935 F.2d at 1458. In support of its position, the government presents several documents, which, in its view, indicate that Marathon Corp. "repeatedly and systematically conducts business in Kentucky." (D.N. 101, PageID # 1413) Most notably, the Commonwealth references two renewal supply agreements allegedly entered into by Marathon Corp. that provide for the sale of RFG to unbranded retailers in the Louisville and Northern Kentucky markets. (*See* D.N. 101-5; D.N. 101-6) As evidence that Marathon Corp. was the contracting party, the government notes that the signatories to the agreements were Marathon Corp. officers, who allegedly signed in their capacities with Marathon Corp. (*See id*; *see also* D.N. 101, PageID # 1417–18; D.N. 101-2, PageID # 1470)

Viewed in the light most favorable to the Commonwealth, these supply agreements establish that Marathon Corp. "[c]ontract[ed] to supply services or goods in this Commonwealth," on behalf of either itself or, at the very least, its subsidiary Marathon LP. Ky. Rev. Stat. § 454.210(2)(a). As explained above, "the contract need not be made or executed 'in this Commonwealth,' but, rather, only . . . provide for the supplying of services or goods to be transported into, consumed or used in Kentucky." *Hinners*, 336 S.W.3d at 896. The agreements indicate that the corporate officers who signed them did so in their capacities with Marathon Corp. In light of the signatures, the Commonwealth has made a *prima facie* showing that Marathon Corp. contracted to supply goods to be transported and consumed in Kentucky. Additionally, because this action arises from Marathon Corp.'s alleged use of supply agreements to maintain its monopoly over the RFG market, the government has set forth sufficient facts indicating a

reasonable and direct nexus between the cause of action and the jurisdictional predicate. *Caesars*, 336 S.W.3d at 59; *cf. Modern Holdings, LLC v. Corning Inc.*, No. 13–405–GFVT, 13–406–GFVT, 2015 WL 1481443, at *8 (E.D. Ky. Mar. 31, 2015) (finding that the action did not arise from the jurisdictional predicate where the holding company's alleged connection to Kentucky was a "sale and supply agreement" that was not the basis for the lawsuit).

In reply, Marathon Corp. claims that the officers signed the agreements in their capacities with Marathon LP, not Marathon Corp. (D.N. 109, PageID # 2334) However, in determining whether Marathon Corp. has established its *prima facie* showing, the Court must not "weigh[] the controverting assertions" of the defendants. *Theunissen*, 935 F.2d at 1459; *see also Alexander Assocs., Inc. v. FCMP, Inc.*, No. 10–12355, 2012 WL 1033464, at *17 (E.D. Mich. Mar. 27, 2012) ("The defendants contend that those visits were made in his capacity as [the resident defendant rather than the non-resident defendant]. However, when relying on the affidavits to determine a motion to dismiss for lack of personal jurisdiction, the court must . . . not weigh 'the controverting assertions of the party seeking dismissal.'"). If Marathon Corp. wished for this Court to weigh its controverting assertions, it could have requested an evidentiary hearing to determine in what capacity the officers signed the supply agreements at issue. (*See* D.N. 109)

The Court may therefore exercise jurisdiction over Marathon Corp. consistent with Kentucky's long-arm statute.

**B. Due Process**

Because Kentucky's long-arm statute applies, the Court must next determine "if exercising personal jurisdiction over the non-resident defendant offends [its] federal due process rights." *Caesars*, 336 S.W.3d at 57. To satisfy the traditional due process test, the Commonwealth must "establish with reasonable particularity sufficient 'minimum contacts' with [Kentucky] so that the

exercise of jurisdiction over [Marathon Corp.] would not offend 'traditional notions of fair play and substantial justice.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Due process limits the Court's exercise of both general and specific personal jurisdiction.  General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit," whereas specific jurisdiction is based on a connection "between the forum and the underlying controversy." *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014).

The paradigm forums for the exercise of general jurisdiction over a corporation are those places where the corporation is incorporated and where it maintains its principal place of business. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  Marathon Corp. is incorporated in Delaware and has its principal place of business in Ohio.  (D.N. 92-2, PageID # 1178)  It apparently has no offices or employees in Kentucky, and the Commonwealth has presented no evidence demonstrating that Marathon Corp.'s connections with Kentucky are so "continuous and systematic" as to render it "at home" here. *See Daimler AG*, 571 U.S. at 137–38.  Thus, the Court cannot exercise general jurisdiction over Marathon Corp.[8]

For the Court to exercise specific jurisdiction consistent with due process, "[Marathon Corp.'s] suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284.  The Sixth Circuit applies a three-part test to determine whether a court's exercise of specific jurisdiction is consistent with due process:

> First, the defendant must purposefully avail [itself] of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough

---

[8] In any event, it appears that the Commonwealth does not allege that general jurisdiction is present here. (*See* D.N. 101, PageID # 1420–22)

connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

A defendant purposefully avails itself when it "personally takes actions that create a 'substantial connection' with the forum state such that [it] can 'reasonably anticipate being haled into court there.'" *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 356 (6th Cir. 2014) (citing *Neogen Corp.*, 282 F.3d at 889). The Commonwealth argues that Marathon Corp. has repeatedly availed itself of the Kentucky market through its extensive operations there, including "the sale of hundreds of thousands of gallons of gasoline . . . throughout the state." (D.N. 101, PageID # 1420–21) Although it is unclear the extent to which Marathon Corp.—rather than Marathon LP—performed these "extensive operations," the Commonwealth has at the very least set forth facts indicating that Marathon Corp. officers signed renewal supply agreements in their roles at Marathon Corp. (*See* D.N. 101-5; D.N. 101-6) The Court thus finds that Marathon Corp. has purposefully availed itself of the privilege of acting in Kentucky.[9] *See Industrial Servs. of Am., Inc. v. Abcom Trading P'ship Ltd.*, 869 F. Supp. 2d 807, 810 (W.D. Ky. 2012) ("Abcom purposefully availed itself of the privilege of doing business in Kentucky by contracting to deliver goods to a Kentucky corporation in Kentucky.").

The Court likewise finds that the second and third prongs of the *Mohasco* test are satisfied. As to the second prong, the Court requires that "the cause of action, of whatever type, have a substantial connection with the defendant's [in-forum] activities." *Bird v. Parsons*, 289 F.3d 865,

---

[9] Marathon Corp. contends that this Court's decision in *Poynter v. Ocwen Loan Servicing, LLC*, No. 3:13-cv-773-DJH-CHL, 2016 WL 5380926 (W.D. Ky. Sept. 23, 2016), is instructive on this issue. However, in *Poynter*, the plaintiffs did not refute the defendant's assertion that it was merely a holding company. *Id.* at *3. Here, the Commonwealth sets forth facts indicating that Marathon Corp. contracted to supply gasoline to Kentucky, which contradicts Marathon Corp.'s claim that it is a mere holding company uninvolved with the business of gasoline delivery.

875 (6th Cir. 2002). As noted above, the Commonwealth's cause of action arises from Marathon Corp.'s alleged execution of the supply agreements at issue.

Once the first two *Mohasco* prongs are met, "an inference of reasonableness arises . . . and [] only the unusual case will not meet this third criterion." *Theunissen*, 935 F.2d at 1461 (internal quotations omitted). To determine whether exercising jurisdiction is reasonable, the Court "must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 113 (1987). The Supreme Court has also instructed courts to weigh "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Id*. (citing *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292 (1980)). In this case, exercise of personal jurisdiction over Marathon Corp. is reasonable. First, other than having to travel to the forum state, the burden on Marathon Corp. is no more than any defendant would bear during litigation. Second, because Kentucky residents were allegedly injured by a nonresident who purposefully availed itself of the privilege of doing business in Kentucky, the Commonwealth has an interest in resolving this case. *See Third Nat'l Bank in Nashville v. WEDGE Grp. Inc.*, 882 F.2d 1087, 1092 (6th Cir. 1989). Finally, because the alleged injuries occurred in Kentucky, the judicial system's interest in efficiency favors Kentucky as the forum.

In sum, the Court concludes that the Commonwealth has demonstrated that personal jurisdiction exists over Marathon Corp. in Kentucky. The Court will therefore deny Marathon Corp.'s motion to dismiss for lack of personal jurisdiction.

### III.     Marathon Corp.'s and Speedway's Rule 12(b)(6) Motion

Marathon Corp. and Speedway also move to dismiss the Commonwealth's claims pursuant to Rule 12(b)(6).  (D.N. 92)  In order to avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the plaintiff has not shown that it is entitled to relief.  *Id*. at 679.  The complaint need not contain "detailed factual allegations," but it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id*. at 678 (citing *Twombly*, 550 U.S. at 555).  "Although for the purposes of a motion to dismiss [the Court] must take all of the factual allegations in the complaint as true, [the Court is] not bound to accept as true a legal conclusion couched as a factual allegation."  *Id*. (citing *Twombly*, 550 U.S. at 555).  Furthermore, "[w]hile a complaint will survive a motion to dismiss if it contains either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory . . . legal conclusions masquerading as factual allegations will not suffice."  *Phila. Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (internal quotations omitted).

In support of their motion to dismiss, Defendants challenge the Commonwealth's use of "Marathon" as a shorthand for Marathon Corp., Marathon LP, and Speedway.  (D.N. 92-1, PageID # 1164–67)  In its second amended complaint, the Commonwealth at times does not differentiate among the various Marathon entities; rather, it alleges generally that "Marathon" engaged in the anticompetitive conduct.  (*See* D.N. 88)  In doing so, Defendants maintain, the Commonwealth

fails to "allege facts that demonstrate what *each* defendant did," as required to avoid dismissal under Rule 12(b)(6).[10] (D.N. 92-1, PageID # 1165)

Defendants' argument is unavailing. District courts within the Sixth Circuit have consistently found the Commonwealth's approach sufficient to survive a motion to dismiss. *See, e.g.*, *Tiffany Florist, Inc. v. Citizens Fin. Grp., Inc.*, No. 17-10551, 2017 WL 3224470, at *2 (E.D. Mich. July 11, 2017) ("[W]here the amended complaint states that 'Defendants' did this or 'Defendants' did that, the plain allegation is that both Defendants did each act. This does not present such a vague statement that Defendants are rendered unable to respond."); *Grubbs v. Sheakley Grp., Inc.*, No. 1:13–cv–246, 2014 WL 202041, at *14 (S.D. Ohio Jan. 17, 2014) ("The particular role played by each corporate entity is a matter to be fleshed out during discovery." (internal quotations omitted)); *In re Automotive Parts Litig. (Wire Harness)*, Nos. 12-cv-00102, 12-cv-00103, 2013 WL 2456586, at *3 (E.D. Mich. June 6, 2013) ("dismissal is not required merely because Plaintiffs did not name each Defendant in the allegations pleaded in support of their Sherman Act claim," where, taken as a whole, the complaint pleaded a conspiracy to restrain trade); *In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 795 (N.D. Ohio 2011) ("[T]he plausibility pleading standard does not require a court to construct a mandatory checklist of the 'who, what, where, when, and how' of an antitrust agreement for each defendant. Common

---

[10] To strengthen their argument, Defendants first rely on the Commonwealth's previous motion to amend, in which the government stated that beyond adding Marathon Corp. and Speedway as defendants, it did "not seek to substantively amend the allegations in the Complaint in any way." (D.N. 71-1, PageID # 710) In Defendants' view, this statement indicates that the Commonwealth added no facts to its second amended complaint regarding Marathon Corp.'s and Speedway's roles in the alleged antitrust actions. (D.N. 92-1, PageID # 1164) Defendants' view is misplaced. The complaint alleges facts indicating that Defendants "collectively, as branches of the same corporate entity, engage[d] in a scheme to unlawfully suppress competition and fix prices." (*See* D.N. 86, PageID # 875) The fact that the government did not "substantively amend the allegations" does not mean that the government's second amended complaint is incapable of clarifying which Marathon entities conducted the actions alleged in the first amended complaint.

sense prevails."); *see also Hinds Cty., Miss. v. Wachovia Bank N.A.*, 700 F. Supp. 2d 378, 394 (S.D.N.Y. 2010) ("A § 1 complaint must adequately allege the plausible involvement of each defendant and put defendants on notice of the claims against them, but it need not be detailed with overt acts by each defendant."). As explained below, when the complaint is read in a commonsense manner, it states sufficient facts indicating what role each Marathon entity had in the alleged antitrust actions, notwithstanding the Commonwealth's use of the shorthand "Marathon."

Defendants' proffered Sixth Circuit caselaw does not compel a different result. *See Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.*, 667 F.3d 669 (6th Cir. 2011); *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896 (6th Cir. 2009); *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430 (6th Cir. 2008). In *Bondex International*, the plaintiffs had suggested at oral argument that their complaint's "generic references to the misconduct of 'all Defendants'" encompassed a certain theory of liability against Century Indemnity Company specifically. 667 F.3d at 681. The court rejected that argument, reasoning that the plaintiffs had "fail[ed] to raise [the theory of liability] in any pleadings or at any stage of the [prior] proceedings," and thus they could not expand their allegations on appeal by simply citing the general claim against "all Defendants" contained in their complaint. *Id.* But the situation here is different. The Commonwealth is not attempting to use general allegations to raise an after-trial claim against a specific defendant—indeed, this matter is only at the pleading stage. The government simply uses shorthand to indicate that the Marathon entities have at times collectively engaged in the alleged antitrust actions. (*See* D.N. 88)

*In re Travel Agent Commission Antitrust Litigation* is also distinguishable. There, the plaintiffs alleged conspiracy and parallel conduct by several companies in violation of § 1 of the

Sherman Act. 583 F.3d at 905. The court took issue with the fact that while two of the companies were named as defendants, neither was mentioned in the body of the amended complaint, nor did the plaintiffs specify how the companies were involved in the alleged conspiracy. *Id*. In other words, the plaintiffs' vague assertion to "defendants" did not indicate what alleged actions on the part of the companies violated the antitrust laws. *Id*.

Here, the Commonwealth has provided sufficient factual content to raise a plausible inference indicating the specific anticompetitive actions allegedly taken by Marathon Corp. and Speedway. The complaint states that Marathon Corp., like Marathon LP, "is engaged in the business of petroleum refining and marketing."[11] (D.N. 88, PageID # 1092) The complaint also explains that Speedway "is engaged in the business of gasoline and convenience item sales." (*Id*.) Given these definitions, the complaint's use of the shorthand "Marathon" does not prevent the Court to infer the plausibility of the companies' alleged misconduct. First, the Commonwealth alleges that "[u]nbranded stations purchase gasoline from Marathon and other wholesalers through supply agreements" containing anticompetitive provisions. (*Id*., PageID # 1095–97) Given Marathon Corp.'s purported engagement in petroleum refining and marketing, "Marathon" in that instance plausibly refers to Marathon Corp. and/or Marathon LP. Second, Marathon Corp. apparently advertises on its corporate website the fact that it and its subsidiary companies "have approximately 280 properties for sale . . . [which] are subject to a possible 25-year petroleum deed restriction." (*Id*., PageID # 1100) Thus, at the very least, the complaint states sufficient facts indicating that Marathon Corp. advertises the deed restrictions at issue. Third, the complaint alleges that "Marathon, *in conjunction with Speedway*, sold real property parcels in Kentucky that

---

[11] Defendants contest that assertion. (D.N. 92-1, PageID # 1168) However, under Rule 12(b)(6), the Court takes the complaint's factual assertions as true. *Iqbal*, 556 U.S. at 678.

once maintained retail gasoline operations with deed restrictions that prohibited future gasoline sales." (*Id.*, PageID # 1099–1100 (emphasis added))  Contrary to Defendants' suggestion, the Commonwealth's allegation raises the plausible inference that Speedway played some role in executing or imposing the deed restrictions and that "Marathon" in that instance refers to Marathon Corp./Marathon LP rather than all three entities.[12]

In any event, the Commonwealth's imprecise use of "Marathon" is acceptable given its reference to Marathon as "a *fully integrated* distributor of gasoline and other petroleum-based products [which] owns and/or operates an *integrated* refining, marketing and transportation system." (*Id.*, PageID # 1089 (emphasis added))  Despite Defendants' contention, the Commonwealth's reference to Marathon as an integrated corporate unit implies that "Marathon" often acts as a single entity rather than as separate corporate organizations.  In light of that allegation, the government's use of "Marathon" is sufficiently specific at this stage to inform Defendants that the Commonwealth alleges that the various Marathon entities at times acted together to commit the alleged antitrust actions.[13]  *See In re Duramex Diesel Litig.*, 298 F. Supp. 3d 1037, 1056 (E.D. Mich. 2018) ("Given Plaintiffs' allegation that Bosch employees and constituent entities often blur the legal boundaries between Bosch subsidiaries, the allegations against the Bosch Defendants are sufficiently specific.").  The Court will therefore deny Marathon Corp.'s and Speedway's motion to dismiss.

---

[12] On that note, Defendants' reliance on *Total Benefits Planning Agency* is unavailing.  There, the complaint contained no facts regarding the conspiracy in question beyond mere conclusory remarks.  552 F.3d at 426.  In contrast, the Commonwealth cites specific exchange agreements, supply agreements, and deed restrictions, and names the non-Marathon parties to those agreements (e.g., ExxonMobil, Kroger, etc.).  (D.N. 88, PageID # 1097, 1098)

[13] Defendants' argument to the contrary places a much higher burden on the Commonwealth than is required at the pleading stage.  (D.N. 109, PageID # 2338–39)  Given the government's allegation that Marathon is an "integrated" corporate entity, the Court may plausibly infer that Defendants collectively engaged in the antitrust actions in question.  *Iqbal*, 556 U.S. at 678.

## IV.     Marathon LP's Motion to Dismiss

In its motion to dismiss the Commonwealth's first amended complaint, Marathon LP argued that the government's federal antitrust claims were barred by the indirect-purchaser rule established in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).   (*See* D.N. 28-1, PageID # 225–29)   In *Illinois Brick*, the Supreme Court held that generally, only overcharged direct purchasers, and not subsequent indirect purchasers, may assert federal antitrust claims.   431 U.S. at 737–38. However, the *Illinois Brick* court acknowledged an exception to that holding when the direct purchaser is owned or controlled by the alleged antitrust actor.   *Id.* at 736 n.16.   Thereafter, the Sixth Circuit held that this so-called control exception "is limited to relationships involving such functional economic or other unity between the direct purchaser and either the defendant or the indirect purchaser that there effectively has been only one sale." *Jewish Hosp. Ass'n of Louisville, Ky., Inc. v. Stewart Mech. Enters., Inc.*, 628 F.2d 971, 975 (6th Cir. 1980).

In denying Marathon LP's prior motion to dismiss, the Court found that although the Commonwealth brought its claims on behalf of "indirect purchasers" (i.e., Kentucky consumers), the government had "allege[d] sufficient facts [in its first amended complaint] to support the application of the control exception." *Marathon Petroleum Co., LP*, 191 F. Supp. 3d at 699. Specifically, the Court noted that the Commonwealth claimed

> that Speedway is the wholly-owned subsidiary of Marathon . . . that the exchange and supply agreements, coupled with Marathon's dominant market position, give Marathon control over petroleum suppliers . . . and that [the Commonwealth] is suing on behalf of customers who purchase gasoline at retail outlets owned or controlled by Marathon.

*Id.*   Because it found that the control exception applied, the Court deferred deciding whether *Illinois Brick* barred the Commonwealth's state-law antitrust claims.   *Id.* at 705.

In its second amended complaint, the Commonwealth clarifies the relationship between Marathon LP and Speedway, indicating that Marathon LP has no ownership stake in Speedway.[14] (*See* D.N. 88)  Marathon LP again moves to dismiss the Commonwealth's federal antitrust claims, arguing that the primary basis for the Court's prior ruling is no longer valid (i.e., the Commonwealth no longer alleges that Marathon LP owns Speedway) and thus the control exception is inapplicable.  (*See* D.N. 93-1)  Marathon LP also argues that because the control exception is inapplicable, the Court must address whether *Illinois Brick* bars the Commonwealth's state-law antitrust claims.  (*Id.*)  However, because the Commonwealth still alleges facts indicating "that the exchange and supply agreements, coupled with Marathon[] [LP's] dominant market position, give Marathon [LP] control over petroleum suppliers . . . and that [the Commonwealth] is suing on behalf of customers who purchase gasoline at retail outlets . . . controlled by Marathon [LP]," the government has sufficiently established the control exception for purposes of the pleading stage.  *See Marathon Petroleum Co., LP*, 191 F. Supp. 3d at 699.

## A. Federal Antitrust Claims

In support of its motion to dismiss, Marathon LP argues that by not alleging a parent-subsidiary relationship between Marathon LP and Speedway, the Commonwealth has failed to plausibly establish that its claims fall outside the scope of the indirect-purchaser rule.  (D.N. 93-1, PageID # 1198)  Marathon is incorrect that ownership is necessary for the control exception to apply, however.  Some courts have recognized the exception outside the context of a parent-subsidiary relationship where, for example, the company "control[s] the wholesalers through interlocking directorates . . . loan agreements that subject the wholesalers to the manufacturers'

---

[14] Rather, the complaint alleges that Speedway is a "wholly-owned subsidiary" of Marathon Corp. (D.N. 88, PageID # 1089)

operating control, trust agreements, or *other modes of control separate from ownership* of a majority of the wholesalers' common stock." *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 605–06 (7th Cir. 1997) (emphasis added); *see also Howard Hess Dental Labs. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 372 (3d Cir. 2005) (recognizing that "[c]ourts . . . have extended the control exception beyond a parent-subsidiary relationship"). And ultimately, the Sixth Circuit merely requires a "relationship[] involving such functional economic or other unity between the direct purchaser and . . . the defendant . . . that there effectively has been only one sale." *Jewish Hosp.*, 628 F.2d at 975. The *Jewish Hospital* court did not hold that ownership is required to find such "functional economic or other unity." *Id.*

In its second amended complaint, the Commonwealth alleges facts indicating that the exchange and supply agreements at issue, coupled with Marathon's dominant market position, result in Marathon LP controlling petroleum retailers and thereby the retail price of gasoline.[15] (*See* D.N. 88) Most notably, the government claims that Marathon LP controls certain of its direct-purchaser retailers through contractual provisions that waive the ability of those retailers to bring antitrust suits on their own. (*Id.*, PageID # 1090, 1098–99) And more generally, the Commonwealth alleges "economic unity" among Marathon Corp., Marathon LP, and Speedway. (*Id.*, PageID # 1089 ("Marathon is a *fully integrated* distributor of gasoline and other petroleum-

---

[15] Marathon LP argues that alleging "dominant market position" alone is insufficient. (D.N. 93-1, PageID # 1201) However, as noted, the Commonwealth alleges more than mere market control. (D.N. 88, PageID # 1090) The Commonwealth describes how Marathon LP allegedly used its "dominant market position" to "illegally manipulate and attempt to manipulate the market" through "anticompetitive supply agreements," "deed restrictions," and other anticompetitive practices. (*Id.*, PageID # 1090–91) Marathon LP's caselaw in support of its position is therefore inapplicable here. (*See* D.N. 93-1, PageID # 1201–02; D.N. 117, PageID # 2746)

based products and owns and/or operates an *integrated* refining, marketing and transportation system." (emphasis added)).[16]  *See also Jewish Hosp.*, 628 F.2d at 975

Marathon LP fails to persuade the Court that these allegations are insufficient to establish the control exception for pleading purposes.  Marathon LP cites several cases that it argues stand for the proposition that a plaintiff must allege more than "bare-bones" control to survive a motion to dismiss.  However, in examining the precise holdings of these cases, the Court finds that they are distinguishable.  *See In re Lithium Ion Batteries Antitrust Litig.*, No.: 13–MD–2420 YGR, 2014 WL 309192, at *7–*8 (N.D. Cal. Jan. 21, 2014) (rejecting the control exception where plaintiffs alleged "mere influence" rather than control);  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. M 07–1827 SI, C 12–3802 SI, 2013 WL 1164897, at *3 (N.D. Cal. Mar. 20, 2013) (dismissing antitrust claims where plaintiffs alleged that the defendants had simply "instructed" its affiliated companies how to act).  The Court agrees that mere instruction or influence does not sufficiently indicate control.  Here, however, the Commonwealth alleges that Marathon LP controls Speedway and the unbranded retailers in question and thereby the retail price of gasoline because of its market position and the anticompetitive agreements.  Put differently, the government claims that given Marathon's alleged corporate structure (i.e., its "economic unity"), its dominant market position, and the anticompetitive agreements, Marathon LP controls retail pricing and thus "there effectively has been only one sale" between Marathon LP and Kentucky consumers.  *Jewish Hosp.*, 628 F.2d at 975.  That allegation is sufficient to survive a motion to dismiss.[17]  *See City of*

---

[16] Marathon LP takes issue with the cited quotation, noting its failure to explicitly state that Marathon LP exercises control over Speedway.  However, when the quote is read alongside the complaint as a whole and taken as true, *see Iqbal*, 556 U.S. at 678, it raises a plausible inference that either Marathon Corp. *or* Marathon LP exercises such a degree of control over Speedway that there has effectively been one sale from the distributor level to the consumer.  (*See* D.N. 88)

[17] Marathon LP maintains that it "directly sells to distributors and certain retailers," including "independent" Marathon brand retailers.  As such, Marathon LP contends, the control exception is

*Moundridge, KS v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 32 (D.D.C. 2007) ("If plaintiffs can

establish they purchased natural gas from entities under defendants' control, plaintiffs would fall

under the exception delineated in *Illinois Brick*. At this stage of the lawsuit, the [plaintiffs] have

sufficiently pled control even though they have failed to specify the nature of the alleged control.");

*cf. In re Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1343 (9th Cir. 1982) ("None of the

leases or supply agreements at issue here, however, purport to allow the defendant oil companies

to fix the retail dealers' price to the public.").[18]

     The Court therefore finds that the Commonwealth has sufficiently alleged "functional

economic unity" between Marathon LP and the retailers in question to make a sale of gasoline to

---

[18] inapplicable given the Commonwealth's failure to allege that Marathon LP controls these distributors or independent retailers. (D.N. 117, PageID # 2750) However, in deciding a motion to dismiss, the Court takes the facts of the complaint as true. *See Tackett*, 561 F.3d at 488. The complaint presents a supply chain running from Marathon Corp./Marathon LP to Speedway/unbranded retailers to consumers. (*See* D.N. 88) Whether there are intermediate distributors or whether the consumers purchased gasoline from Marathon's "independent" brand locations are questions reserved for summary judgment or trial. *See In re Mercedes-Benz Anti-Trust Litig.*, 157 F. Supp. 2d 355, 366–67 (D.N.J. 2001) (accepting the plaintiffs' argument that control "exist[ed] through the contractual relationship of agency" for purposes of a motion to dismiss but allowing defendants to renew their *Illinois Brick* argument at a later date).

[18] Accordingly, *Kloth v. Microsoft Corp.*, 444 F.3d 312 (4th Cir. 2006), and *Howard Hess Dental Labs.*, 424 F.3d at 372, are inapplicable. In *Kloth*, the plaintiffs failed to allege any facts indicating that Microsoft controlled the retail prices set by its direct purchasers. 444 F.3d at 321. In contrast, the Commonwealth alleges facts indicating that Marathon LP has effective control over the retail price of RFG in Northern Kentucky. (D.N. 88, PageID # 1091; *id.*, PageID # 1095–1102) Similarly, in *Howard Hess Dental Labs.*, the court held that the plaintiffs' allegations failed to indicate that the defendant "own[ed] any interest" in the direct purchasers or that "functional unity exist[ed]" among the direct purchasers and the defendant. 424 F.3d at 372. Moreover, the court held that "even assuming that [the defendant] exert[ed] some degree of control over its dealers . . . . [n]othing about [the defendant's] 'control' . . . would [have] prevent[ed] the dealers from suing [the defendant]." *Id.* Here, the Commonwealth alleges that through its supply agreements, Marathon LP has effectively prevented the unbranded retailers at issue from asserting antitrust claims. The Commonwealth also sets forth facts indicating that Marathon's corporate structure is such that Speedway would be prevented from suing Marathon LP for antitrust violations. (D.N. 88, PageID # 1089)

the retailers effectively a sale to Kentucky consumers. *Jewish Hosp.*, 628 F.2d at 975. The government may proceed with its federal antitrust claims.

**B. Kentucky Antitrust Claims**

Because the Court finds that the Commonwealth has sufficiently alleged that the control exception is applicable here, consistent with its prior Opinion, it need not discuss whether *Illinois Brick* bars the government's state-law antitrust claims. *See Marathon Petroleum Co., LP*, 191 F. Supp. 3d at 705 ("But as explained above, the indirect-purchaser rule does not bar the Commonwealth's [state-law] claims because the control exception applies.").

## V.     Conclusion

For the reasons set forth above, it is hereby

**ORDERED** as follows:

(1)     Marathon Corp.'s and Speedway's motion to dismiss (D.N. 92) is **DENIED**.

(2)     Marathon LP's motion to dismiss (D.N. 93) is **DENIED**.

(3)     This case is **REFERRED** to Magistrate Judge Colin H. Lindsay for a status conference.

September 26, 2018

**David J. Hale, Judge**
**United States District Court**